UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUWAN ALLEN, as Personal Representative of the
 Estate of CHAYCE ALLEN, Deceased,

                                            Case No.
        Plaintiff,                            Hon.

v.

RANDALL T. FIELDS DAVIS, APRIL L. SHAKOOR,
TRACIE FIELDS, DOMINIC FOX, JASMINE GATLING,
TRESA SIMMONS, CANDACE ANDERSON, ALYSON
DORSEY, LaSHAWNDA MCCOY, LARRY CHRIST,
STEVEN M. BROTT, JOSHELLE SHELBY,
and KEJUANA MCCANTS individually, and in their official
capacities as employees of  State of Michigan, Department of
Health and Human Services, Children's Protective Services Division,

                 Defendants.

A. VINCE COLELLA (P49747)
ELENA T. KAATZ (P85501)
**MOSS & COLELLA, P.C.**
Attorneys for Plaintiff
28411 Northwestern Hwy, Ste 1150
Southfield, MI 48034
248-945-0100/F: 248-945-1801
vcolella@mosscolella.com

JONATHAN R. MARKO (P72450)
ALEX L. WALDMAN (P80946)
**MARKO LAW, PLLC**
Attorneys for Plaintiff
220 W. Congress, 4th Floor
Detroit, MI 48226
313-777-7529 / F: 313-771-5785
jmarko@marko.law.com

<u>**COMPLAINT AND DEMAND FOR JURY TRIAL**</u>

There is no other pending or resolved
civil action arising out of the same transaction
or occurrence as alleged in the complaint.

 /s/ A. Vince Colella
A. Vince Colella (P49747)

NOW COMES the Plaintiff, JUWAN ALLEN, as Personal Representative of the Estate of CHAYCE ALLEN, Deceased, by and through his attorneys, MOSS & COLELLA, P.C., by A. VINCE COLELLA, and MARKO LAW, PLLC, by JONATHAN R. MARKO, and for his Complaint and Demand for Jury Trial now states the following:

<u>**PRELIMINARY STATEMENT**</u>

1. This case arises out of the death of three-year-old Chayce Allen ("Chayce" or "Decedent") resulting from years of horrific abuse and neglect, numerous instances of which were known by, ignored and deliberately disregarded by Defendants.

2. On June 24, 2022, Chayce's decaying corpse was found stuffed into a broken freezer in the basement of his mother's home- a home that had been subject to several visits by Defendants prior to his death.

3. Chayce was pronounced dead on June 24, 2022.

4. In his three short years of life, Chayce had been face-to-face with each Defendant multiple times with allegations including but not limited to bruised ribs, nonaccidental blunt force trauma causing permanent blindness, black eyes, third degree burns, constant vomiting from blows to the chest area, and all other egregious injuries detailed herein.

5. Defendants were entrusted with the duty of protecting this vulnerable child from harm and neglect and had the chance to intervene and diligently respond to the severity of the situation and the horrific nature of the allegations. However, each time, Defendants left Chayce with or returned him soon after to his abusive mother.

6. Plaintiff brings these state and federal law claims against Defendants' for their grossly negligent, willful, wanton and deliberate indifference to a known serious risk of serious harm or death to Chayce Allen, including the failure to uphold their legal and ethical responsibilities to protect defenseless children contrary to clearly established law, and to secure compensation for these wrongful acts, and to help end the harm perpetrated by Defendants and other similarly positioned against the children of Michigan.

**PARTIES**

7. Plaintiff, JUWAN ALLEN ("Allen"), is the duly appointed Personal Representative of the ESTATE OF CHAYCE ALLEN, deceased, is a resident of the City of Detroit, County of Wayne, State of Michigan.

8. At all times relevant, Defendant RANDALL T. FIELDS DAVIS ("DAVIS") is a resident of Wayne County and was acting under color of law as a CPS Investigator, pursuant to his employment with the State of Michigan Department of Health and Human Services Children's Protective Services Division ("MDHHS") and pursuant to the numerous investigations, interviews and home visits with Chayce Allen at his family home.

9. At all times relevant, Defendant APRIL L. SHAKOOR ("SHAKOOR") is a resident of Wayne County and was acting under color of law as a CPS Investigator, pursuant to her employment with the State of Michigan Department of Health and Human Services Children's Protective Services Division ("MDHHS") and pursuant to the numerous investigations, interviews and home visits with Chayce Allen at his family home.

10. At all times relevant to this Complaint, Defendant TRACIE FIELDS ("T. FIELDS") is a resident of Wayne County, and was acting under color of law as a CPS Specialist, pursuant to his employment with the State of Michigan Department of Health and Human Services Children's Protective Services Division ("MDHHS") and was charged with the supervision, investigation and protection of children who are subject to abuse and neglect in the state, including Chayce Allen, who was subject of numerous abuse allegations, CPS investigations, interviews and home visits with Chayce Allen at his family home.

11. At all times relevant to this Complaint, Defendant DOMINIC FOX ("FOX") is a resident of Wayne County, and was acting under color of law as a CPS Specialist, pursuant to his employment with the State of Michigan Department of Health and Human Services Children's Protective Services Division ("MDHHS") and was charged with the supervision, investigation and protection of children who are subject to abuse and neglect in the state, including Chayce Allen, who was subject of numerous abuse allegations, CPS investigations, interviews and home visits with Chayce Allen at his family home.

12. At all times relevant, Defendant JASMINE GATLING ("GATLING") is a resident of Wayne County, and was acting under color of law as a CPS Specialist and MDHHS Monitor for Chayce Allen, pursuant to her employment with the State of Michigan Department of Health and Human Services Children's Protective Services Division ("MDHHS") and pursuant to the numerous investigations, interviews and home visits with Chayce Allen at his family home.

13. At all times relevant, Defendant TRESA SIMMONS ("SIMMONS") is a resident of Wayne County, and was acting under color of law as a CPS Specialist and MDHHS Monitor for Chayce Allen, pursuant to her employment with the State of Michigan Department of Health and Human Services Children's Protective Services Division ("MDHHS") and pursuant to the numerous investigations, interviews and home visits with Chayce Allen at his family home.

14. At all times relevant to this Complaint, Defendant CANDACE ANDERSON ("ANDERSON") is a resident of Wayne County, and was acting under color of law as a CPS Specialist, pursuant to his employment with the State of Michigan Department of Health and

Human Services Children's Protective Services Division ("MDHHS") and was charged with the supervision, investigation and protection of children who are subject to abuse and neglect in the state, including Chayce Allen, who was subject of numerous abuse allegations, CPS investigations, interviews and home visits with Chayce Allen at his family home.

15. At all times relevant, Defendant ALYSON DORSEY ("DORSEY") is a resident of Genesee County, and was acting under color of law as a CPS Specialist and MDHHS Monitor for Chayce Allen, pursuant to her employment with the State of Michigan Department of Health and Human Services Children's Protective Services Division ("MDHHS") and pursuant to the numerous investigations, interviews and home visits with Chayce Allen at his family home.

16. At all times relevant to this Complaint, Defendant LaSHAWNDA MCCOY ("MCCOY") is a resident of Wayne County, and was acting under color of law as a CPS Specialist, pursuant to his employment with the State of Michigan Department of Health and Human Services Children's Protective Services Division ("MDHHS") and was charged with the supervision, investigation and protection of children who are subject to abuse and neglect in

the state, including Chayce Allen, who was subject of numerous abuse allegations, CPS investigations, interviews and home visits with Chayce Allen at his family home.

17. At all times relevant to this Complaint, Defendant LARRY CHRIST ("CHRIST") is a resident of Wayne County, and was acting under color of law as a CPS Specialist, pursuant to his employment with the State of Michigan Department of Health and Human Services Children's Protective Services Division ("MDHHS") and was charged with the supervision, investigation and protection of children who are subject to abuse and neglect in the state, including Chayce Allen, who was subject of numerous abuse allegations, CPS investigations, interviews and home visits with Chayce Allen at his family home.

18. At all times relevant to this Complaint, Defendant STEPHEN BROTT ("BROTT") is a resident of Wayne County, and was acting under color of law as a CPS Specialist, pursuant to his employment with the State of Michigan Department of Health and Human Services Children's Protective Services Division ("MDHHS") and was charged with the supervision, investigation and protection of children who are subject to abuse and neglect in the state, including

Chayce Allen, who was subject of numerous abuse allegations, CPS investigations, interviews and home visits with Chayce Allen at his family home.

19. At all times relevant to this Complaint, Defendant JOSHELLE SHELBY ("SHELBY") is a resident of Wayne County, and was acting under color of law as a CPS Specialist, pursuant to his employment with the State of Michigan Department of Health and Human Services Children's Protective Services Division ("MDHHS") and was charged with the supervision, investigation and protection of children who are subject to abuse and neglect in the state, including Chayce Allen, who was subject of numerous abuse allegations, CPS investigations, interviews and home visits with Chayce Allen at his family home.

20. At all times relevant, Defendant KEJUANA MCCANTS ("MCCANTS") is a resident of Ingham County, and was acting under color of law as a CPS Specialist and MDHHS Monitor for Chayce Allen, pursuant to her employment with the State of Michigan Department of Health and Human Services Children's Protective Services Division ("MDHHS") and pursuant to the

numerous investigations, interviews and home visits with Chayce Allen at his family home.

## JURISDICTION AND VENUE

21. This case involves a civil rights action for damages brought pursuant to 42 U.S.C. §§ 1983 and the Fourth and Fourteenth Amendments to the United States Constitution against the above-named Defendants for their wrongful acts, committed by Defendants in their individual and official capacities.

22. This Court has jurisdiction of this action under provisions of Title 28 of the United States Code, §§ 1331, 1343, and 1367.

23. The amount in controversy satisfies the jurisdictional limits of this Court as damages in this matter exceed Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees.

24. The conduct giving rise to this cause of action occurred in the City of Detroit, County of Wayne, State of Michigan, and is within the geographic area comprising the Eastern District of Michigan, Southern Division.

25. Pursuant to 28 U.S.C. §§ 1391(b)(2), venue is proper before this Honorable Court, as the Defendants reside within this judicial

district and the conduct complained of occurred within this judicial district.

26. Each and every act of Defendants, as set forth herein, were done by those Defendants under the color and pretense of the statutes, ordinances, regulations, laws, customs, and usages of the State of Michigan, and by virtue of, and under the authority of, each individual Defendant's employment and / or contractual relationship with the State of Michigan.

27. Venue and jurisdiction are properly vested in this Court.

## **<u>BACKGROUND</u>**

28. Plaintiff adopts and incorporates by reference each and every allegation in each preceding paragraph as though fully set forth herein.

29. Chayce Allen was born on September 1, 2018, and was only three years old at the time of his horrific death.

30. Chayce was his killed by his biological mother, Azuradee France ("France"). Chayce was a member of the same household and resided with France and her other four biological children at 12765 Monte Vista Street, Detroit, MI 48238.

31. On June 23, 2022, at approximately 20:45, a Central Intake Specialist, employed at the Children's Protective Services Division, called 911 to request a welfare check at the home after multiple family members expressed concerns to CPS that Chayce may be dead.[1] The officers arrived at the home shortly after, on June 24, 2022, around 12:24 a.m.

32. The officers initially made contact with France, who spoke to them from a window. In response to France's vague, evasive and highly suspicious responses to their inquiries about Chayce's whereabouts, the officers informed her that they would enter the residence in an attempt to locate the missing child. Thereupon, she exited the home and confessed to the murder of her son, Chayce, informing officers that he was in the fridge in her basement, and had been since his death sometime in March or April 2022.

33. Chayce's lifeless and decaying body was found stuffed into a laundry bag that was stored on the shelf of a broken freezer in France's basement. His small body was barely recognizable, and had clearly been there for months, decomposing in the basement while his other siblings lived upstairs.

---

[1] France told multiple family members conflicting stories about where Chayce was and deflected every inquiry when confronted. After months of Chayce missing, family began to suspect that Chayce was dead.

34. In the past 3 years, Chayce suffered unimaginable torture at the hands of France, being the subject of numerous child abuse and neglect cases reported to Defendants.

35. The final incident when Chayce was still alive was reported to Defendants mere months before his tragic death. His last months of life are illustrated by the allegations of the report: Chayce had a black eye, a gash near his eyebrow, bruised ribs, could not keep food down, and was constantly vomiting. At the hands of his mother and what doctors described as "non-accidental blunt force trauma", Chayce became fully and permanently blind.

36. He spent his final days of torment and abuse in complete darkness.

## FACTUAL ALLEGATIONS

37. Defendants were made aware that Chayce was being abused by his mother on November 17, 2018. He was only two months old.

38. On the aforementioned date, Defendant SIMMONS filed a CPS Investigation Report,  noting allegations of physical abuse and neglect, perpetrated by Chayce's mother, France against her nephew and her own children, including Chayce.

39. As set forth in the report, France had been watching her two-year-old nephew, Logan, for approximately 2 months. Upon being picked up on

November 10, 2018, Chayce was observed to have visible signs of physical abuse including a black eye, a swollen lip, contusion on his forehead, multiple bruises on his buttocks and rib cage, abrasions on his abdomen, abrasions on his penis area, and abrasions on the back of his neck. He was also found to be "malnourished", "dirty, and smell[ing] of urine".[2]

40. During a home visit, defendants observed that the children did not have beds, and there was a rat infestation, evident by the holes that the rats chewed through in one of the children's pack n play.

41. Defendants were also put on notice that one of France's older daughters was not going to school, despite being kindergarten age.

42. On November 17, 2018, one week after France's arrest, CPS confirmed the childrens' whereabouts via a phone call. (Leslie Apple, CPS; Camille Young, CPS).

43. Defendant SIMMONS filed a petition for the removal of France's children on December 6, 2018. France's risk assessment scored high, her safety assessment scored not safe, and she was placed on the Central Registry, and Defendants believed that France overall did not fully

---

[2] France was arrested on 11/10/18, and charged with Child Abuse 3 (a felony). It is unclear why the Defendants waited an entire week after her arrest, 11/17/18, to file this report, initiate any protective actions, or verify where the children were.

understand the seriousness of her actions.

44. On December 6, 2018, Chayce and his siblings were removed by the Wayne County Third Circuit Court, Family Division as a result of France's severe physical injuries to Chayce.[3]

45. France got her children back on November 17, 2020.

46. Less than two months after her children returned to France's care, on January 8, 2021, Defendants returned to investigate yet another abuse allegation, highlighting a troubling pattern of neglect and failure to address the serious risks the children were facing.

47. Defendants were called to investigate the 2nd-3rd degree burns on Chayce's hand.

48. On January 11, 2021, Defendant FIELDS-DAVIS conducted a home visit, whereupon he observed Chayce's burn, which had progressed to the point of skin peeling.

49. In addition to attending to Chayce, Defendants assessed the home and found that four of the children share one bunkbed. The home was cluttered, and there was a bottle of bleach without a lid sitting on the floor.

---

[3] Case no. 18-002014-N

50. France claimed to have taken Chayce to the urgent care immediately after the incident, but could not provide any documentation, or discharge papers, causing Defendants to suspect medical neglect.

51. After the home visit, France called Defendant FIELD-DAVIS and disclosed that she had initially lied about taking Chayce to the urgent care after he was burned because she "did not want her children taken away from her".

52. France admitted that she only took Chayce to the hospital after Defendants became involved. At the hospital, in addition to treatment of Chayce's burn, doctors discovered an abscess on his ankle that required immediate surgery.

53. Chayce was hospitalized for the abscess.

54. As a result of the investigation, France was placed on the Central Registry again, but her children remained under her care. France continued to be monitored by Defendants who conducted periodic progress reports until around April 2021.

55. Despite Defendants' unsubstantiated claims that France was improving, on September 1, 2021, she severely abused Chayce again.

56. This time, France admitted to spanking Chayce in a way that she acknowledged was excessive. When France requested that relatives pick Chayce up, he was observed with a black eye, a gash near the top of his eyebrow, and bruised ribs.

57. Chayce also appeared malnourished and allegedly kept throwing up after eating and could not keep anything down.

58. Defendant FOX interviewed France at a hotel, where she was staying with four of her children, excluding Chayce. The Defendants' report did not clarify why France was staying at a hotel, only noting that it was "not adequate or safe" housing for all of her children.

59. France informed Defendants that she had sent Chayce to her father's house.

60. Defendant BROTT visited France's fathers house where he was able to verify France's claims that Chayce was staying there.

61. Defendant BROTT conducted interviews with both Chayce, and his grandfather, and informed them that Chayce would need to be seen by a doctor.

62. Defendants closed the investigation on October 14, 2021 ignoring evidence demonstrating obvious signs of abuse and neglect.

63. Five or more months later, Chayce was killed by France.

64. As a result of Defendants' failure to intervene and protect Chayce Allen from the abusive household, he suffered severe physical and emotional trauma. Chayce would have otherwise had the opportunity to experience a normal childhood, free from abuse, and to engage in activities such as playing, learning, and developing like other children. However, due to the abuse, Chayce endured significant limitations in physical and emotional development.

65. Defendants' actions and omission were done within the scope and course of their employment as child protective services workers, and they had a duty to intervene in a timely and responsible manner to ensure Chayce's safety and well-being.

66. Defendants had actual knowledge of Chayce's vulnerable status, including the risks posed by the abusive environment, his mother's lengthy history of abuse, and were thus fully aware of the child's need for protection, emotional support and a safe living environment.

67. Ultimately, Defendants' repeated decisions to return Chayce Allen to an abusive household, despite clear signs of harm, resulted in Chayce suffering extreme trauma, which contributed to his untimely

death at the young age of 3. The failure to remove Chayce from the abusive environment was grossly negligent and directly caused the child's injuries and subsequent death.

68. Additionally, Plaintiff sustained additional damages, including but not limited to: past, present, and future medical expenses related to the abuse; emotional distress and trauma; loss of quality of life; and other damages further identified in discovery.

## COUNT I
## DEPRIVATION OF CIVIL RIGHTS
## IN VIOLATION OF 42 U.S.C. § 1983 AGAINST DEFENDANTS

69. Plaintiff adopts and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

70. Pursuant to 42 U.S.C. § 1983 and the Fourth Amendment and Fourteenth Amendment to the United States Constitution, Defendants owed Plaintiff Chayce Allen a duty to act with reasonable care and diligence in protecting Chayce Allen from harm and abuse, and to intervene to prevent further abuse when they had knowledge of its existence.

71. Reasonable child protective services workers in the position of Defendants at the time of this incident would have known, in light

of existing law and the circumstances, that the failure to protect Chayce Allen from further abuse was unlawful and violated Chayce's constitutional rights. Defendants' acts of indifference, neglect, and failure to take appropriate actions directly led to Chayce's death.

72. Defendants committed the above described action and/or omission under the color of law and by virtue of their authority as child protective services workers for Michigan Department of Health and Human Services, Children's Protective Services Division, and substantially deprived Plaintiff Chayce Allen of his clearly established rights, privileges, and immunities guaranteed to him as a citizen of the United States by the Fourteenth Amendments of the United States Constitution in violation of U.S.C §1983, which includes, but is not limited to, the following:

   a. The right to be free from cruel and unusual punishment, including death by abuse or neglect;

   b. The right to due process under the law, including the right to be protected from known threats to safety and well-being;

   c. The right to be free from governmental indifference to harm or abuse that shocks the conscience of a civilized society;

73. As a direct and proximate result of the aforementioned conduct, Plaintiff Chayce Allen suffered severe emotional distress, physical torture and ultimately death, due to Defendants' deliberate indifference and failure to protect the child from abuse. Additionally, the family of Chayce Allen has endured profound grief, emotional trauma and loss due to Defendants' actions and omissions.

## COUNT II:
## VIOLATION OF 42 U.S.C. §1983 – STATE CREATED DANGER

74. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 74 as if fully set forth herein.

75. Plaintiff, Chayce Allen, a citizen of the United States entitled to all rights, privileges and immunities accorded to all citizens of the State of Michigan and the United States, including the clearly established right to not be deprived of life without due process of law under the Fourteenth Amendment to the United States Constitution, as enforced pursuant to 42 U.S.C. §1983.

76. Any reasonable person would be aware of this clearly established right.

77. Defendants knowledge of this clearly established right, and acting in deliberate indifference, violated Chayce Allen's right not to be

deprived of life without due process, as secured by the Fourteenth

Amendment's Due Process Clause, by taking affirmative acts

under color of state law to disrupt the status quo and create a

danger of death that did not exist in the status quo prior to those

affirmative state actions, and by taking affirmative acts which

caused the death of Chayce Allen, which would not have happened

but-for those affirmative state actions

78. At all relevant times, Defendants were acting under the color of

state law as employees of MDHHS and its CPS Division, working

with families, police, the courts and other agencies to prevent,

identify, and treat child abuse and neglect.

79. Defendants took affirmative acts that created or increased the risk

of danger, including but not limited to:

   a. Returning Plaintiff Chayce Allen to France, despite knowing, or
      having probable cause to know, that Plaintiff Chayce Allen was
      being abused, neglected, tortured and facing serious risk of
      serious harm or death;

   b. Promoting a policy, practice or custom of concealment,
      misrepresentation, minimizing or avoidance and non-escalation
      to higher authorities, including law enforcement, of abuse,
      neglect and torture by France;

   c. Promoting a policy, practice or custom of not properly
      interviewing and questioning a parent suspected of neglect,

abuse and torture of her child, when they knew Chayce Allen was under a direct threat of serious injury or death;

d. Disregarding and diverting a mental health crises;

e. Declining to file mandatory reports of suspected neglect or abuse concerning Chayce Allen in violation of MCL 722.623;

f. Any other additional affirmative acts that created or increased the chance that Chayce Allen would commit suicide which may become known through the course of this litigation

80. Defendants' affirmative actions, as described above, created or increased the risk of harm to Plaintiff.

81. The danger created by Defendants was specific to Plaintiff, as distinguished from a risk that affects the public at large.

82. Defendants knew or should have known that their actions specifically endangered Plaintiff.

83. Defendants acted with deliberate indifference toward Plaintiff, as demonstrated by their failure to act in the face of a known and obvious risk of serious harm.

84. Defendants' conduct was so egregious and outrageous that it shocks the conscience.

85. As a direct and proximate result of the aforementioned conduct, Plaintiff Chayce Allen suffered severe emotional distress, physical torture and ultimately death, due to Defendants' deliberate

indifference and failure to protect the child from abuse. Additionally, the family of Chayce Allen has endured profound grief, emotional trauma and loss due to Defendants' actions and omissions.

## COUNT III:
## GROSS NEGLIGENCE AGAINST DEFENDANTS
## (IN VIOLATION OF STATE LAW, MCL 691.1407)

86. Plaintiff adopts and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

87. At all material times, Defendants, as employees of the Michigan Department of Health and Human Services, Children's Protective Services Division, owed a duty to all persons, including Chayce Allen, to avoid wanton, willful, or reckless misconduct; to avoid grossly negligent conduct; and to avoid conduct so reckless as to demonstrate a substantial lack of concern as to whether injury results.

88. Notwithstanding the aforementioned duties, Defendant's conduct, as described herein, foreseeably created a risk of severe physical, emotional, and psychological harm to Chayce Allen, and deprived him of his right to be free from abuse, neglect and harm.

89. The special relationship between Defendants and the defenseless minor Chayce Allen gave rise to the duty of Defendants to ensure the child's safety, well-being, and protection from harm, and to intervene when abuse was known or suspected, rather than contributing to the ongoing harm.

90. Defendants owed Chayce Allen a duty of reasonable care in their roles as child protective services workers, as they had de facto control over the child's welfare and were lawfully tasked with ensuring the child's safety from abuse, neglect, and harm.

91. Defendants' reckless and grossly negligent treatment of Chayce Allen was the direct and proximate cause his past and future harms, including severe emotional distress, physical injury, and ultimately death, as well as damage to the child's dignity, psychological well-being, and ability to trust others and authority figures.

92. The injuries, damages, harms, and losses that Chayce Allen sustained were directly and proximately caused by Defendants' willful and wanton conduct while employed as child protective services workers for Michigan Department of Health and Human Services, Children's Protective Services Division.

93. Defendants' failure to intervene and protect Chayce Allen from abuse was grossly negligent because their conduct was so reckless that it demonstrated a substantial lack of concern for whether the child would be harmed, or whether harm would result from their failure to act.

94. As a direct and proximate result of the aforementioned conduct, Plaintiff Chayce Allen suffered severe emotional distress, physical torture and ultimately death, due to Defendants' deliberate indifference and failure to protect the child from abuse. Additionally, the family of Chayce Allen has endured profound grief, emotional trauma and loss due to Defendants' actions and omissions.

## COUNT IV: WRONGFUL DEATH

95. Plaintiff incorporates by reference all preceding paragraphs 1-80 as if fully set forth herein.

96. At all relevant times, Defendants were employees of Michigan Child Protective Services, acting under color of state law and within the scope of their employment.

97. Under Michigan's Wrongful Death Act, MCL 600.2922, a cause of action may be maintained when the death of a person is caused by the wrongful act, neglect, or fault of another.

98. Plaintiff Chayce Allen was a minor child under the protection and supervision of Michigan Child Protective Services.

99. Defendants owed a statutory duty of care to Decedent under Michigan law, including but not limited to MCL 722.621 et seq. (Child Protection Law), to protect Decedent from abuse and neglect.

100. Defendants breached their duties to Plaintiff, Chayce Allen by:

   a. Failing to properly investigate reports of abuse and neglect;

   b. Ignoring clear evidence of ongoing abuse and/or neglect;

   c. Failing to remove Decedent from a dangerous living situation despite having knowledge of imminent risk of harm;

   d. Failing to follow mandatory state protocols for child welfare investigations;

   e. Failing to communicate critical information between agencies and personnel;

   f. Returning Decedent to an unsafe environment without proper assessment.

101.   Defendants' conduct constituted gross negligence as defined by MCL
      691.1407(8), as it was conduct so reckless as to demonstrate a substantial
      lack of concern for whether an injury would result.

102.   Defendants' conduct demonstrated a deliberate indifference to
      Decedent's constitutional rights and safety, as they had actual knowledge
      of facts from which they could infer a substantial risk of serious harm,
      actually drew that inference, and then disregarded that risk.

103.   As a direct and proximate result of Defendants' gross negligence and
      deliberate indifference, Decedent suffered severe physical and emotional
      injuries, ultimately resulting in Decedent's death.

104.   As a further direct and proximate result of Defendants' gross
      negligence and deliberate indifference, Decedent's statutory interested
      parties have suffered damages including, but not limited to:

    a.   Reasonable medical, hospital, funeral, and burial expenses;

    b.   Reasonable compensation for the pain and suffering of the
      deceased while conscious between the time of injury and death;

    c.   Loss of financial support;

    d.   Loss of society and companionship; and

    e.   Other damages permitted under MCL 600.2922.

105.   The conduct of Defendants was willful, wanton, and in reckless

disregard for the rights and safety of Decedent, entitling Plaintiff to

exemplary damages.

## **RELIEF AND DAMAGES REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter

judgment in his favor and against Defendants, jointly and severally, and award the

following damages:

A.  Compensatory damages in excess of Seventy-Five Thousand
($75,000.00) Dollars.

B.  Punitive damages against Defendants;

C.  Costs incurred and attorney's fees pursuant to 42 U.S.C §
1988;

D.  Prejudgment interest; and

E.  Any other relief this Court deems equitable and just.

Respectfully submitted,

MOSS & COLELLA, P.C.

BY:   /s/ A. Vince Colella
A. VINCE COLELLA (P49747)
Attorney for Plaintiff
28411 Northwestern Hwy, Suite 1150
Southfield, MI 48034
(248) 945-0100
DATED: March 31, 2025          vcolella@mosscolella.com

Respectfully submitted,

MARKO LAW, PLLC

BY:   /s/ Jonathan R. Marko
JONATHAN R. MARKO (P72450)
Attorney for Plaintiff
220 W. Congress, 4th Floor
Detroit, MI 48226
(313) 777-7529
jmarko@markolaw.com

DATED: March 31, 2025

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUWAN ALLEN, as Personal Representative of the
 Estate of CHAYCE ALLEN, Deceased,

        Case No.
      Plaintiff,        Hon.

v.

RANDALL T. FIELDS DAVIS, APRIL L. SHAKOOR,
TRACIE FIELDS, DOMINIC FOX, JASMINE GATLING,
TRESA SIMMONS, CANDACE ANDERSON, ALYSON
DORSEY, LaSHAWNDA MCCOY, LARRY CHRIST,
STEVEN M. BROTT, JOSHELLE SHELBY,
and KEJUANA MCCANTS individually, and in their official
capacities as employees of  State of Michigan, Department of
Health and Human Services, Children's Protective Services Division,

      Defendants.
_____

A. VINCE COLELLA (P49747)
ELENA T. KAATZ (P85501)
**MOSS & COLELLA, P.C.**
Attorneys for Plaintiff
28411 Northwestern Hwy, Ste 1150
Southfield, MI 48034
248-945-0100/F: 248-945-1801
vcolella@mosscolella.com

JONATHAN R. MARKO (P72450)
ALEX L. WALDMAN (P80946)
**MARKO LAW, PLLC**
Attorneys for Plaintiff
220 W. Congress, 4th Floor
Detroit, MI 48226
313-777-7529 / F: 313-771-5785
jmarko@marko.law.com
_____

## **DEMAND FOR JURY TRIAL**

NOW COMES the Plaintiff, JUWAN ALLEN, Personal Representative of the Estate of CHAYCE ALLEN, Deceased, by and through his attorneys, MOSS & COLELLA, P.C., by A. VINCE COLELLA, and MARKO LAW, PLLC, by JONATHAN R. MARKO, and respectfully requests jury trial in the above captioned matter.

Respectfully submitted,

MOSS & COLELLA, P.C.

BY:  /s/ A. Vince Colella
A. VINCE COLELLA (P49747)
Attorney for Plaintiff
28411 Northwestern Hwy, Suite 1150
Southfield, MI 48034
(248) 945-0100
DATED: March 31, 2025      vcolella@mosscolella.com

Respectfully submitted,

MARKO LAW, PLLC

BY:  /s/ Jonathan R. Marko
JONATHAN R. MARKO (P72450)
Attorney for Plaintiff
220 W. Congress, 4th Floor
Detroit, MI 48226
(313) 777-7529
DATED: March 31, 2025      jmarko@markolaw.com